## WRIGHTSVILLE & TENNILLE R. R. CO. v. WALKER.

On the trial of a suit against a railroad company for damages resulting from the alleged killing of plaintiff's horse by the running of defendant's train, when there is positive and uncontradicted testimony by eye-witnesses that the animal was not thus killed, and when such testimony is entirely consistent with all the other facts and circumstances developed by the evidence, a verdict for the defendant is demanded. The petition for certiorari and the answer of the magistrate thereto in this case showing that such was the character of the evidence upon which the jury in the justice's court found a verdict for the plaintiff, and showing further no contradiction to positive testimony that the defendant's agents in charge of the train were in the exercise of all ordinary care and diligence at the time of the alleged accident, the judge of the superior court erred in not sustaining the certiorari on the ground that the verdict was contrary to the evidence.

Submitted May 30, — Decided July 22, 1899.

Certiorari. Before Judge Gamble. Johnson superior court. September term, 1898.

*A. F. Daley*, for plaintiff in error.   *V. B. Robinson*, contra.

LEWIS, J.   W. E. Walker brought suit against the Wrightsville & Tennille Railroad Company, for damages to the amount of $50, for the alleged killing of the plaintiff's horse by the defendant's train. The jury in the justice's court returned a verdict for the plaintiff for the amount sued for; whereupon the defendant brought to the superior court of Johnson county its petition for certiorari, claiming that the verdict of the jury was contrary to law and the evidence. After hearing the petition and the answer of the magistrate thereto, the court overruled the petition; upon which ruling the company assigns error in its bill of exceptions. It appears from the evidence introduced in behalf of the plaintiff, on the trial in the justice's court, that he had a mule and a horse on defendant's right of way. From the tracks of the animals the mule had been in the center of the railroad and the horse on the side of the track, and they had run a distance of 150 or 200 yards ahead of defendant's train, when they both quit the road and turned to the left therefrom. Where they left the railroad there seemed to be a slide, as if something had slid from the railroad out to the left. The horse was found lying in a help-

less condition about sixty yards from the railroad-track. The mule was uninjured. The witnesses who examined the horse saw no external signs of injury or bruises. It appeared as if it had been injured some way in the hip, so that it could not use its hind legs sufficiently to stand. The animal died the next day. Another witness for the plaintiff testified that the horse and mule ran from 150 to 200 yards down the track, and when they got nearly to the cattle-gap both animals turned to the · left of the road; that the horse appeared to make a slide when he left the road, and after he had made a few steps it seemed that one of his hoofs dragged as he walked; that the horse then turned and crossed the railroad-track about thirty yards from where the slide took place, and then went fifty or sixty yards from the track, where he was found. Plaintiff's witnesses heard the cattle signal from the engine on the evening the horse was hurt. It seems that none of them saw the accident or saw the animals on the track. Upon this testimony the plaintiff relied for a recovery. In rebuttal the railroad company introduced the engineer and fireman of the train that was alleged to have killed the horse, who testified that the train was running at a speed of thirty or thirty-five miles an hour; that they saw the mule and horse about 350 yards ahead of the train, and when they got within 150 yards of them the animals commenced running. The horse got on the side, and the mule in the center, of the track. Thereupon the cattle signal was at once given, brakes put on, the engine reversed, and the train checked as rapidly as possible. The horse never got on the track at all, and was not struck by the engine or train. Both animals got off the track and turned to the left before the train reached them. The nearest the engine approached the horse was about ten feet at the time he turned off from the track. The testimony of the engineer was positive that the engine did not hit the horse. He further testified that he had eighteen loaded cars, and it was impossible to check the speed of the train more than it was done in that short distance. Another witness, who was a passenger on the train, testified for the defendant that he heard the cattle signal, noticed that the speed of the train was checked, looked to see what was

ahead of the engine, and as the train passed by the horse he noticed him standing with his head up, apparently not hurt. This passenger was riding in the caboose attached to the train.

The above is substantially all the material testimony which appears in the record bearing upon the real issue in this case. It does appear from the answer of the magistrate that the plaintiff below testified that the reason he did not examine the horse more carefully was that the section-boss on that portion of the road told him it was no use, that the cars or engine did it; that where the horse turned off from the railroad it appeared that he had been knocked down, because there were signs where he had slid out to the left of the track. There was no pretense, however, that the section-master saw the animal when it was hurt, and no doubt what he stated was simply an inference from the fact that the horse had been on the track and was found disabled near the track soon after the train had passed. As to the inference drawn by the plaintiff, that where there were signs of the animal sliding it looked as if he had been knocked down, it is exceedingly difficult to imagine how it could be determined whether such signs of an animal upon the surface of the earth were made by an accidental fall or by being knocked down with a blow. Perhaps there were facts enough shown by the witnesses sworn in behalf of the plaintiff to create the presumption that the injury complained of was caused by the horse being struck by the moving train; but this was simply an inference to be drawn from certain circumstances introduced in evidence, and was not established by any positive proof whatever. We fail to see why the same circumstances relied upon by counsel for defendant in error to show that the horse was struck by the engine are not equally consistent with the theory of the defense that the horse's injury was not caused by the train at all, but by the horse falling while running from the railroad-track. There was evidence of a slide where the horse turned to the left. It is true that this might have been caused by the horse being struck by the train and thrown where the signs of this slide were seen. It is equally true that it might also have been caused by the horse accidentally falling after being entirely free from reach

of the train. If the animal had been injured by a blow from so powerful an instrument as a moving engine, it is reasonable to suppose that some external signs of a bruise or abrasion of the skin would have been left. No such bruises were found upon the horse. But the positive testimony in the case entirely consistent with every circumstance that was proved on the trial, and not contradicted by a single witness, was the testimony in behalf of the defendant that the horse was never struck by the train at all. This was further corroborated by the testimony of a passenger, who does not seem to have any interest whatever in the issue on trial, to the effect that he observed the horse as the train passed him, and he gave every evidence of being entirely unhurt. In addition to all this it appears from the uncontradicted testimony introduced in behalf of the defendant that its agents at the time of the alleged accident were in the exercise of all ordinary care and diligence to prevent the injury. It is true that juries may found their verdicts upon circumstantial evidence if it reasonably points to a certain conclusion, although that conclusion may be disputed by the positive testimony of witnesses. But when such circumstances are entirely consistent with positive and unimpeached testimony, they of course can not be the basis of arbitrarily disregarding such proof; and in this case, the circumstances relied upon for a recovery being, if anything, more consistent with the theory of the defense than with the theory upon which the cause of action was based, and the defendant's theory being sustained by positive and uncontradicted evidence, we think the verdict was without any evidence to support it, and that the court erred in not sustaining the certiorari.

*Judgment reversed. All the Justices concurring.*